UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | Criminal No. 4:08-40026-FDS |
| | ) | |
| FRANK MILLER, | ) | |
| | ) | |
| Defendant. | ) | |

GOVERNMENT'S SENTENCING MEMORANDUM

Frank Miller's Offense Conduct

This case arises from the operation of a scheme to systematically defraud Gitto/Global Corporation's secured lenders through the routine overstatement of the company's accounts receivable and inventory. A financial fraud that began with inflated inventory and the "pre-billing" of anticipated orders rapidly escalated to meet the undisciplined spending demands of Gitto/Global's owners, Frank Miller and Gary Gitto. "Pre-billing" was replaced with overstated sales to actual customers, which in turn was further supplemented with reported sales to wholly fictitious entities in the millions of dollars. Frank Miller, chief financial officer, conceived the fraud and managed and controlled the fraud until the day it crashed. Frank Miller is the most culpable defendant in this conspiracy.

Frank Miller or those working directly under his supervision submitted falsely inflated Borrowing Base Certificates to the secured lenders virtually every business day. Each falsehood listed on the attachments to the Borrowing Base Certificates was "supported" by volumes of documentation generated internally at Gitto/Global, by employees diligently working away at Miller's direction, all in an effort to make the fantasy appear real and to fool the banks. Of course, a fraud of this magnitude could not be managed entirely within the walls of Gitto/Global.

Among other things, the bogus accounts receivable needed to appear to be paid. In one three year period, Miller cycled more than $1 billion through the sham J&J Chemical Distributors account solely for this purpose. At Miller's direction, Gitto/Global employees devoted countless hours to issuing the thousands of checks payable to J&J Chemical and checks payable to Gitto/Global from J&J Chemical in an endless shuttle of fraud, and also to the tracking of the pairing of phony invoices with sham deposits.

Miller was the face of Gitto/Global to the lenders; Miller made the daily representations to the lenders; Miller supervised the on-site bank exams and controlled the flow of false documents and information to the bank examiners; and Miller was the contact for the outside accountant. Over time, Miller deceived at least four lenders plus three banks used to cycle funds with shell companies, and he ensnared more than a score of Gitto/Global employees and other individuals, including his friends and business colleagues.

The house of cards collapsed when Clinton Savings Bank returned over $11 million in checks drawn on the J&J Chemical account that were payable to Gitto/Global. With that collapse and exposure guaranteed, Frank Miller appeared at the office of the United States Attorney to cooperate, intent on seeking leniency.

The Advisory Guidelines

The advisory Guidelines calculation is undisputed and the resultant range is 121 to 151 months (TOL 32, CHC I). The offense characteristics which increase the calculation from the base level are loss (more than $20 million); sophisticated means (shell companies, fraudulent documents); and role (organizer/leader of extensive criminal activity). Based upon the evidence, all of those characteristics squarely, and appropriately, apply to Miller and his crime. The just

punishment for Frank Miller is a Guidelines sentence.

Departures/Variances

Miller advances various arguments for departure or variance from the advisory Guidelines range. The Court should neither depart nor vary.

1. Substantial Assistance /Cooperation

After his exposure was a certainty, Miller cooperated with law enforcement. Cooperation and substantial assistance are not one and the same and many cooperators are disappointed in their quest to achieve the government's recommendation of leniency notwithstanding the crimes committed. Miller did not provide substantial assistance and the government seeks no departure pursuant to USSG §5K1.1 on his behalf.

That government decision is unreviewable, save for unconstitutional motive or lack of a rational relationship to any legitimate government motive and, in cases involving a cooperation agreement, for bad faith. Wade v. United States, 504 U.S. 181 (1992); United States v. Alegria, 192 F.3d 179 (1st Cir. 1999). Miller claims no unconstitutional motive (nor could he); there is no cooperation or plea agreement between the parties. Rather, Miller argues that the government's refusal to file a §5K1.1 motion is motivated by an effort to manipulate Miller's sentence that is not in furtherance of any legitimate government interest. This is not so.

Miller met with law enforcement when his fraud was exposed and not before. Intent on blaming others, many of whom were simply following his directives or otherwise involved in the scheme at his request, and intent on convincing the government that one or both of the Gittos were the most culpable members of the conspiracy, Miller's information was distorted by his avoidance of the acceptance of any more responsibility than he deemed necessary for the

purpose of achieving his own goal - leniency at sentencing.  His proffers were of some value; however, there is an important distinction between his assertions of his value and the government's assessment of his value -  namely, that Miller provided partial, and in critical details self-serving, information.  Upon being charged  Miller took unsubstantiated positions with respect to the loss calculation, based not on the evidence but rather on an apparent desire to position himself differently within the advisory Guidelines framework, and only entered his change of plea the same month that the case was scheduled for trial.

By way of example, only, Miller pointed to Bill Deakin as the scheme's originator.  The evidence does not support Miller's assertion.  In fact, based upon the evidence the government believes that Frank Miller was inflating inventory and "pre-billing" before he ever partnered with Gary Gitto, back at Global Corporation, the company he ran on his own before Gitto/Global ever existed.  Miller carried these fraudulent business practices with him into the merger and the fraud escalated as described above.  Bill Deakin was not even on the scene at Global Corporation and did not join Gitto/Global until the fraud was well underway.  For Miller to tell law enforcement that Deakin originated the practice of "pre-billing" is inconsistent with the evidence yet at the same time, wholly consistent with Miller's incomplete acceptance of personal responsibility.

The government did not file a substantial assistance motion for Frank Miller because he does not merit that filing.  Moreover, in light of the government's assessment of Miller's distortions and partial evidence, his cooperation does not rise to a level deserving of a variance from the advisory Guidelines range.  The Court should consider Miller's cooperation as a factor relevant to Miller's placement within that advisory Guidelines range.

2. Loss as an Overstatement of Seriousness

Miller contends that the loss overstates the seriousness of his conduct because he thought the business was worth more than had been borrowed and because the Gittos were greedier than Miller.  In fact, the business was so permeated with fraud that it was impossible to determine the true value of the company and moreover whatever that value was, it was seriously compromised.  Nobody knows that better than Miller.  The company was so overextended that it was fantasy to believe that it could ever be sold as a going concern and that debts would be fully satisfied.  Miller's argument also fails to acknowledge the millions lost by the unsecured creditors.

Moreover, Miller profited significantly from the scheme, and he operated the Gitto/Global accounts as if they were his own, withdrawing funds at will for his own purposes and to keep the scheme going.  In the six year period between 1999 and 2004, in addition to his annual salary (approximately $250,000), Miller transferred over $4 million from accounts of Gitto/Global and the shell companies, in over two hundred transactions,  to his own personal bank account.  Like the Gittos, Miller charged personal expenses to Gitto/Global on a regular basis, and he paid alimony to an ex-wife by adding her to the Gitto/Global payroll for at least six years  - when she did not work for the company.

To be sure, Miller and Gary Gitto both returned some of the money taken from Gitto/Global.  The chronology of these deposits is consistent with an effort to keep the scheme going rather than to make the company whole.

3.      Coercion/Duress

Miller claims that he committed the offense because of serious coercion or duress that he suffered from the Gittos and in support, he identifies three verbal threats of physical harm made by the Gittos. According to Miller, these threats were made in or about 2002 and 2003, years after Miller had long been engaged in the offense conduct. As the company accelerated toward financial disaster, it is hardly surprising that the relationship amongst its principals would deteriorate, but a "toxic" work environment does not provide adequate foundation for this departure. Miller does his level best to dress his concerns as legitimate fears for his physical safety but his conduct is not proportionate to the threats, if true, and the government concludes that this is in fact another of Miller's self-serving attempts to cloak himself as victim.

<u>Conclusion</u>

Based upon the foregoing, the government submits that a Guidelines sentence is appropriate here. The government recommends a period of imprisonment of 121 months, a period of supervised release of three years, a special assessment of $1400; and restitution in the total amount of $23,641,941.67 as more specifically set forth in ¶113 of the Presentence Report.

Dated: March 4, 2011                                By its attorney,

                                                    CARMEN M. ORTIZ
                                                    United States Attorney

                                    By:    /s/ Lori J. Holik
                                           Lori J. Holik
                                           Assistant U.S. Attorney

CERTIFICATE OF SERVICE

      I hereby certify that on March 4, 2011 I will cause a copy of the above to be served by causing same to be electronically filed with the Court.

                                        /s/ Lori J. Holik
                                        Lori J. Holik
                                        Assistant U.S. Attorney